

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

April 7, 1959

Honorable W. A. Little
Director
Texas Old Age Assistance Commission
Austin, Texas

Dear Mr. Little:

Opinion No. O-590
Re: Legal status of Old Age Assist-
ance warrants issued under House
Bill No. 57, Third Called Ses-
sion, Forty-fourth Legislature,
and House Bill No. 179, Regular
Session, Forty-sixth Legislature.

Replying to your letter of April 5, 1939, addressed to the Attorney General requesting an opinion on the effect and operation of several provisions of House Bill No. 179, Acts Regular Session, Forty-sixth Legislature, we submit answers to your questions herewith:

"1. What is the legal status at the present time of warrants now outstanding that were issued under the provisions of House Bill No. 57, Acts Forty-fourth Legislature, Third Called Session?"

House Bill No. 57, which became effective October 31, 1936, authorized the Texas Old Age Assistance Commission to issue interest-bearing warrants against the Old Age Assistance Fund for payment of old age assistance benefits. No time or schedule of payment of these warrants was provided for in the Act. The Legislature, however, indicated that it believed the revenues provided in House Bill No. 8, which also became effective October 31, 1936, would be sufficient within the biennium to pay current old age assistance benefits and out of surplus revenues to accrue to the Old Age Assistance Fund retire the warrants. Such intention was expressed in the following language of House Bill No. 57:

"The unexpended balance of the appropria-
tion made in said House Bill No. 8 remaining on

Honorable W. A. Little, April 7, 1939, Page 2

hand on August 31, 1937, is hereby reappropri-
ated for the purposes of this Act for the fis-
cal year ending August 31, 1938, to assure the
payment of any warrants issued under the provis-
ions of this Act."

Subsequent increase in the number of qualified recipients
for Old Age Assistance, together with failure of the taxes contain-
ed in House Bill No. 8 to bring in the total revenue expected, made
it impossible to continue current benefit payments and to retire the
warrants as anticipated. This fact, however, did not affect the va-
lidity of the outstanding warrants. This department, in an able
opinion written by Fred C. Varner, Jr., Assistant Attorney General,
addressed to you under date of July 7, 1937, affirmed the validity
of the warrants issued under House Bill No. 37, although the same
were not paid before August 31, 1938. We quote from this opinion:

"There is no instruction in the law where-
by retirement is directed to be made within any
period of time.

"The legislative intention in the matter
of retirement of these warrants is expressed in
the provisions of House Bill 37, wherein it was
provided that 'The unexpended balance of the ap-
priation made in said House Bill 8, remaining on
hand on August 31, 1937, is hereby reappropriated
for the purposes of this Act for the fiscal year
ending August 31, 1938, to assure the payment of
any warrants issued under the provisions of this
Act.' Clearly it is shown that the intention was
for a retirement program at least throughout the
present fiscal year and a portion of the fiscal
year ending August 31, 1938, because of the fact
that unexpended moneys in the Texas Old Age As-
sistance Fund on hand August 31, 1937, were re-
appropriated for the purposes of this Act for use
during the next fiscal year. The warrants which
bear interest, as authorized in House Bill 37,
are regularly drawn obligations, as authorized by
the provisions of House Bill 8, against the Texas
Old Age Assistance Fund, and as such will be valid
existing obligations until called.

"A further expression of the intention of the
Legislature that said warrants are not to be re-
tired by any certain date is found in the rider at-
tached to the general appropriation bill, and par-
ticularly in that portion thereof setting forth ap-

Honorable W. A. Little, April 7, 1939, Page 3

priation for salaries and expenses of the Old
Age Assistance Commission during the biennium
ending August 31, 1939. This rider, as refer-
red to and set out in your letter, provides for
the appropriation of all income to the Texas Old
Age Assistance Fund, together with any balances
on hand at the end of a prior fiscal year, for
each of the fiscal years ending August 31, 1938,
and August 31, 1939, to the Texas Old Age Assis-
tance Commission for, among other things, the
payment of interest bearing warrants, together
with interest thereon, outstanding on August 31,
1937, that were issued against the Texas Old Age
Assistance Fund under the provisions of House
Bill 57, Acts of the Forty-fourth Legislature,
Third Called Session. * * *

"After considering the various laws and the
contract which are pertinent to this matter, I
respectfully advise that it is the opinion of
the writer, in answering your first question,
that the warrants, together with the interest
thereon, which were issued pursuant to House
Bill 57, Acts of the Forty-fourth Legislature,
Third Called Session, do not have to be retired
within the present fiscal year but rather may be
called and retired at any time when the Board of
Control may direct such call."

The above quoted opinion, we believe, correctly analyzes
the legal status of the warrants issued under the authority of
House Bill 57 prior to the enactment of House Bill 179 of the cur-
rent session of the Legislature. Under the provisions of House
Bill 179, which became effective on February 17, 1939, the Treas-
urer of the State of Texas is directed to call and pay these out-
standing warrants upon the schedule therein provided beginning
October 10, 1939. House Bill 179 also provides for the issuance
of refunding "obligations" in lieu of the warrants, but we do not
believe that such exchange can alter the rights or obligations ex-
isting between the State and holders of the warrants. It is a
change in the form rather than the substance of the legal status
of the warrants.

House Bill 179 expressly appropriates "out of funds allo-
cated in present and/or future laws to the Old Age Assistance Fund
a sum sufficient to pay said obligations and the interest thereon".
We call particular attention to the fact that this provision of
House Bill 179 expressly appropriates money out of the Old Age As-



sistance Fund for the payment of the principal and interest of the outstanding warrants and the new issue of $900,000.00 authorized by the Act; whereas, under House Bill 37 only the "unexpended balance", was directed to be used in the payment of the warrants. This provision of House Bill 179 has the effect, we believe, that these warrants (or the refunding obligations for which they may be exchanged) mature into presently enforcible claims against the Old Age Assistance Fund in accordance with the schedule set out in the Act. Wilkinson vs. Franklin County (Texarkana Court of Civil Appeals, 1936), 94 S.W. (2d) 1190; Underwood vs. Howard (Amarillo Court of Civil Appeals, 1927) 1 S.W. (2d) 730 (writ dismissed), White vs. Calaway, 282 S.W. 642 (writ refused).

These cases involve the construction of R.S. 1925, which provides that county warrants and other claims against a county shall be paid in the order of their registration. In Wilkinson v. Franklin County, supra, the court said at page 1193:

"Article 1625, R.S., clearly denotes the order in which warrants drawn against the county treasurer are to be paid, and amounts to an appropriation of the funds in the county treasury to the payment of all warrants legally drawn against the several classes of funds in the order of registration, and the order of the Commissioners' Court of Franklin County of July 13, 1934, requiring the county treasurer first to pay current warrants drawn against the county general fund ahead of senior registration warrants drawn against said fund is violative of Article 1625, R.S., and is, therefore, void."

The court quoted the following language from the opinion in White v. Calaway (supra):

"The right to secure such payment is not affected, we think, by the fact pleaded in defense and upon evidence in behalf of appellee county that there was not sufficient money in the general fund of the county to pay the debt and to meet other necessary running expenses of the county."

It is true that House Bill 179 does not expressly give priority to these warrants, but it does appropriate money and direct the Treasurer of the State of Texas to pay the warrants out of the Old Age Assistance Fund, as they mature under the schedule. The Old Age Assistance Act, being House Bill No. 26, Acts 1935, Second Called Session, Forty-fourth Legislature, provides in Section



Honorable W. A. Little, April 7, 1939, Page 5


9 (b) thereof, as does the amending act, being House Bill No. 8, Acts 1936, Third Called Session, Forty-fourth Legislature in Article II, Section 11 (b) thereof, as follows:

> "Provided that if the fund is insufficient to pay all grants in full, the same shall be paid prorata based on the amount granted to each recipient."

This authority to reduce current benefit payments to an amount within the available fund, construed in conjunction with the express direction in House Bill 179 to pay outstanding warrants as they mature under the schedule, leads us to the conclusion under the authority of the above cited cases, that the outstanding warrants become a prior claim, as they mature, against the revenues accruing to the Old Age Assistance Fund.

> "2. What is the effect of Section 7 (6) of House Bill No. 179?"

This provision reads as follows:

> "When such obligations shall have been issued in accordance with a resolution adopted by the Texas Old Age Assistance Commission, and shall have been approved by the Attorney General, they shall be incontestable and the full faith and credit of the State shall be pledged to their payment."

We have discussed our construction of the word "incontestable" as used in this Act in our opinion No. O-318, dated February 14, 1939, addressed to the Honorable W. Lee O'Daniel, to which we refer you.

The phrase, "and the full faith and credit of the State shall be pledged to their payment", cannot, we believe, have the effect of making these warrants general obligations of the State of Texas. House Bill 179 expressly provides that these warrants shall be paid out of a special fund, i.e., the Old Age Assistance Fund, and appropriates monies out of said special fund for their payment. This phrase may, however, be interpreted as an expression by the Legislature that it recognizes the State's obligation to provide for the payment of these warrants. It is in effect an express recognition by the Legislature of the implied obligation of the State in such situations as stated by the Supreme Court of Texas, speaking through Greenwood, J., in City of Aransas Pass v. Keiling, 247 S. W. 818, at page 821:



Honorable W. A. Little, April 7, 1939, Page 6

W. 818, at page 821:

"State and federal authorities are uniform that, when an act of a state legislature, authorizing a bond issue, creates, or authorizes the creation of, a certain fund for the bonds' payment, such provision of the act enters into the contract between the debtor and the holders of the bonds, so that it cannot be repealed by subsequent legislation without the substitution of something of equal efficacy. The subsequent legislation would impair the obligation of the contract, and, therefore, come under constitutional condemnation."

Whereas, in this case the court was dealing with a bond issue, we believe the reasoning applies with equal effect to warrants such as these, for whose payment appropriation has been made out of a specific fund.

"3. Does the schedule of payments of the warrants as provided in House Bill No. 179 in Section 6 thereof constitute a prior obligation against the Old Age Assistance Fund during those months provided for in the schedule in which payments are to be made?"

We have already answered this question in the affirmative in the course of our discussion of question No. 1.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Walter R. Koch*

Walter R. Koch
Assistant

WRK:FG

APPROVED:

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS